## In re DOHERTY.
### Patent Appeal No. 2694.

Court of Customs and Patent Appeals.
April 27, 1931.

Edmund G. Borden, of New York City (K. I. White, of New York City, of counsel), for appellant.

T. A. Hostetler, of Washington, D. C., for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the examiner, rejecting all of the claims of appellant's application. Appellant has taken this appeal from the rejection of four claims, numbered 3, 7, 11, and 13. Claims 3 and 11 are illustrative of the claims in issue and read as follows:

"3. A method of developing an oil field as a unit comprising determining the location boundary of an underground oil body, maintaining the oil in its original position in the oil sand by holding a body of gas above the oil body under sufficient pressure to prevent oil from passing up into unwetted sand, extending oil wells into the oil body and forcing oil from that body out through the wells by raising the level of a body of water below the oil body and maintaining sufficient back pressure on the oil flowing through the wells to hold the oil body under substantially its natural pressure."

"11. A method of developing new oil fields comprising determining the location boundary of an underground oil body, maintaining a body of gas above and in contact with the oil body under sufficient pressure to prevent oil from passing up into unwetted sand, extending oil wells into the oil body, and forcing oil from the oil body out through the wells by raising the level of a body of water below and in contact with the oil body."

The references are:

Squires, 1,238,355, August 28, 1917.

Bacon et al., The American Petroleum Industry, McGraw Hill Company, New York, 1916. Article: More Efficient Extraction; pages 428 and 429.

The claimed invention is described by the examiner in his decision as follows:

"The invention relates to a process of development and exploitation of oil fields. In many fields the gas is entrapped above the oil at an upper part of a dome, such dome at the upper part thereof being filled with very porous sand and gas, free of oil, constituting the region of the "unwetted sand" of this application. If a well is drilled in the region of the gas entrapped, the gas rushes out to the surface without performing the useful function of propelling the oil, dissolving therein and thereby lowering the specific gravity of the oil, as also forming bubbles in the body of oil in the process of commingling therewith and thereby assisting the further elevation of the oil to the surface in a manner well understood in the art. If an oil well should be drilled in the region of the oil, the gas pressure will be instrumental in ele-

vating the oil through the well until the level of the oil will become sufficiently low and an open passage from the region of the gas to the mouth of the oil well will be formed, and the rest of the gas in the dome will rush out from the oil well without performing any useful function. The object of this invention is to remedy the phenomenon described above and it proposes to drill 3 wells or 3 series of wells. One ,well, or a series of wells, will be located in the region of the gas at the apex of the dome and are designated with the reference character 10 on figures 2 and 3 showing different formations of the oil bearing sands; the second well, or series of wells will be located without the region of the gas and within the region of the oil and are designated on these views with the reference character 12; the 3d well, or a series of wells, will be drilled without the region of the oil and these last wells will be extended into the formation so as to reach the region below the oil and these wells are designated with the reference character 14. Water is introduced into the wells 14, oil under control is removed from the wells 12 and the wells 10 are utilized for introducing artificial gas pressure should the natural pressure in the dome become too low.

"The rate of removing the oil from the wells 12 and that of introducing water into the wells 14 is such that the oil in the oil region remains above the level of the lower termination of the wells 12, the water introduced elevating the oil so as to keep the level of the oil above these lower terminations of the wells 12 so that the pressure existing in the region of the dome, or introduced therein, shall be operative in elevating the oil through wells 12 and thereby only the gas dissolved and commingled with the oil will find its way out of the wells 12 and on its way out will perform the useful function of elevating the oil to the surface, the free gas in the dome being sealed off by the oil which is kept at a sealing level by the water being introduced through the wells 14."

Appellant in his brief concedes that the above quotation correctly describes the invention claimed, except that it fails to point out that his process contemplates displacing oil from the field by water while holding the upper level of the oil body substantially stationary so that oil will not enter the unwetted gas sand overlying the oil and be lost by absorption in and adsorption with the dry gas sand. We agree with appellant's counsel that said feature is disclosed by appellant's specification.

The Board of Appeals and the examiner concurred in their finding of the unpatentability of the claims in issue, and the rule applies that such finding will not be reversed by us unless shown to be manifestly wrong. Pengilly v. Copeland, 40 F.(2d) 995, 17 C. P. A. 1143.

The Board of Appeals in its decision said:

"It is of course a matter of common knowledge that preliminary surveys are very frequently made, notwithstanding the statements of counsel to the contrary, to determine the extent of an oil field or an oil body. It is also but the usual practice to sink as many wells as are deemed necessary and, as described in the publication cited, 'it is advisable to equip all drilling holes where high pressure is expected with control casing heads.' This is done to take care of the excessive gas pressure which may be found, and frequently is found, above the surface of the oil body. As the oil is forced to the surface by the gas pressure, in wells of this type, the lowering of the oil body and the escape of the gases result in gradual lowering of the pressure of the gas until it is insufficient to force the oil to the surface. Under these conditions, pumping is frequently resorted to, or, as seems to us obvious enough, the pressure of the gas above the oil body is restored. The publication makes it clear that this step of keeping the pressure of the gas above the oil body level constant by introducing compressed air is old since this method is referred to in the following terms:

" 'In Smith and Dunn's method, the pressure gradient is further sustained by a like device of introducing compressed air into some abandoned wells.'

"It is apparent, in consequence, that applicant's method, if it contains any novel step, must include something more than pumping compressed air above the level of the oil body, since in our opinion this step was not only an obvious one but is clearly shown by the above quotation to have been previously practiced. This publication further does state that where the production from the wells has reached an unprofitable point 'water should be turned down the well situated at the lowest point of the sand. It can be obtained either from one of the shallow sands or else introduced from the surface.' Since water possesses a relatively higher specific gravity it would, as is well understood by those skilled in this art, float the oil above it and raise the surface of the oil. It would seem there is here disclosed the

broad conception of introducing compressed air above the oil body and water beneath it. If the pressure of water and air were sufficient the oil would be forced out of the well and it seems to us this is what the publication teaches."

The board then proceeds to discuss the Squires reference and finds that the only essential difference in the process disclosed by it and that disclosed by appellant is that the Squires process was for recovering oil from depleted underground oil bodies, while appellant's process is to be applied to new oil fields.

With respect to this distinction the board said:

"We see no merit in applying this old method to new oil fields, either in their entirety or to parts of them, over applying it to partly depleted oil wells. Its application is only of advantage in any event where the natural pressure of the gas is insufficient and this may be a condition existing in a new oil well or one which has become partly depleted. We think Squires teaches that the pressure of the water would be continued to keep the level of the oil body, if deemed desirable as is explained by the patentee, high enough to engage the lower end of the oil vent or venting well, and, in consequence, are not impressed by the statement of the applicant that Squires keeps 'the top level of the oil body always below the bottom or inlet of the venting wells.' The specification of the patent specifically negatives the contention of the applicant. The gas pressure and water pressure, when the oil is made to engage the lower end of the well vent as Squires explains, would operate to squeeze the oil body, as in applicant's arrangement, and force it out of the venting well.

"We regard all the claims as defining nothing patentable over the prior art of record. Whether the water is inserted at one place or another, or from one source or another, or whether a large area of an oil body is treated all at once or only a small portion is so treated is in our judgment merely a matter of experience or preference and involves nothing unobvious and inventive."

The principal contention of appellant is that the process of appellant and that of Squires are based upon entirely different principles; that appellant's process involves the squeezing of the oil from gas or other pressure from above and water pressure from below, forcing the oil out from the wells by reason of this squeezing process, at the same time maintaining the body of oil at a substantially constant level until it has been practically exhausted; that the Squires method does not contemplate any squeezing process at all, but provides for the sending of a current of air flowing in a free course above the oil body, and out through the venting wells carrying with it particles of oil and gas; and, further, that whereas appellant prevents the oil from rising into the unwetted sand, Squires introduces water for the specific purpose of raising the body into the more open sand through which the air stream passes in order to effect removal of the oil and gas by entrainment in the air stream.

Upon the point of whether Squires discloses a squeezing process applied to the oil body as does appellant, the board calls attention to the following statement found in the Squires specification:

"As described thus far, it is evident that the flotation method is effective no matter what the character of the streak may be. Its most effective application, however, will probably be in those sands where the roof c is of irregular formation so that the oil f is raised to a point where it actually engages the lowermost sections, as $c^1$, $c^2$, and air pockets are formed. These air pockets will increase the effectiveness of the air pressures since seals will be formed wherever the roof dips into the oil."

The board then states:

"As we view the disclosure of the patent it is deemed fully disclosed that the water introduced under pressure may raise the oil to the level where the latter engages the lower ends of the oil vents and that when this is done the method set forth in the appealed claims is fully carried out and the oil is caught between the pressure of the gas above it and the water below it and forced into the oil vent without the escape through such vent of the gas, the oil being, as stated by the patentee, 'pushed along by the air to the venting well.'"

It seems to us that the contention of appellant is well founded in this respect, and that Squires' method does not involve a squeezing process at all. The statement in the Squires specification, upon which the Patent Office tribunals rely, that the most effective application of his method will be where the roof of the oil sands engages the top of the body of oil, forming air pockets which will increase the effectiveness of the air pressures, since seals will be formed wherever the roof dips into the oil, does not, as we view it, result in a squeezing of the oil as occurs by appellant's method. We think that Squires

contemplated a stream of air flowing upon the surface of the oil, except where these air pockets were formed, and at these points the air will force the surface of the oil, where it comes in contact with the roof of the oil sands, to be blown in the direction of the oil wells, and after such point of contact is passed the air will again flow along the surface of the oil body, carrying with it gas and particles of oil.

Therefore, while the Squires process may be regarded as prior art for the introduction of air or gas to the top of the oil body, and of water below it, it does not convey the idea that the bottom of the oil wells should be below the surface of the oil, preventing the ingress of air or gas thereto apart from the body of the oil, so as to create the squeezing process of forcing the oil through the oil well, which is an essential part of appellant's method.

With regard to the reference "Bacon et al., The American Petroleum Industry," we find two statements therein material to the question before us. The first reads as follows:

"It is desirable to tube a flowing well early with the perforations set low in the sand, for this does not seriously reduce the production, and it has the merit of keeping the pressure of the gas in the upper part of the sand in place, where it is valuable for its power of expulsion. But there is a small hole in the working barrel at the top of the sand to keep the top of the oil high and so not expose the sand face as long as the pressure is such that the oil is forced into the hole up to a point far above the top of the sand."

It will be observed that there is here pointed out the desirability of keeping the pressure in the upper part of the sand in place, where it is valuable for its power of propulsion. It is also stated that "In Smith and Dunn's method, the pressure gradient is further sustained by a like device of introducing compressed air into some abandoned wells." It is clear that so long as the pressure is sustained, either by the gas originally above the oil body, or by air and gas introduced above it, the oil would be prevented from passing into unwetted sand, which is an element of all of the claims, either by direct statement or by implication.

The other material statement in said reference publication is as follows:

"When production has reached an unprofitable point, the well should not be abandoned, but held in reserve until the whole pool can be brought under the management of one great company or of several co-operating companies. Only by concerted action can the next effort by the water-flush method be used to extract the remaining oil. Water should be turned down the well situated at the lowest point of the sand. It can be obtained either from one of the shallow sands or else introduced from the surface. *This should be run in fast enough to keep the hole filled up to the source of the water, in order to have a good head and correspondingly rapid penetration.* Then an adjacent well should be given test pumpings, if not regularly pumped, until the on-flow of this water increases its oil output of the second well. After a period of much improved oil production, it will yield more and more water in ever-increasing proportions. Then when the amount of oil is no longer in paying quantities, this well in turn, where feasible, should serve as a point of entrance for water. In this way, the oil is gradually flushed up to the pool to the highest wells. When only these highest are producing, discontinue introducing water at the lowest wells, so as to prevent the oil being washed by the water up to the dip past these wells." (Italics ours.)

The above, we think, clearly discloses the principle involved in appellant's method of introducing water below the body of the oil, and maintaining a pressure of a greater or less degree below the body of oil. Appellant, however, insists that the method thus disclosed is applied only to depleted wells; that no one before had ever thought of drilling wells for the sole purpose of introducing water below the body of oil before the natural pressure of the gas above the body of oil had been reduced or exhausted.

The Board of Appeals and the examiner have held that there is no invention in applying the methods disclosed by Squires and by the reference publication to new oil fields, either in their entirety or in part, over applying them to depleted wells. Upon such finding, the rule hereinbefore referred to, that we will not reverse such tribunals unless manifestly wrong, is applicable. We cannot say that such decision is manifestly wrong, but nevertheless, in order to affirm the decision of the board, we must find that all of the elements found in appellant's claims are found in the prior art, although applied to depleted oil wells in such prior art. We then come to a consideration of the elements of the claims in issue.

We think all of the elements of claims 11 and 13 are found in the prior art, and the de-

cision of the Board of Appeals that they should be rejected should be affirmed.

Claims 3 and 7, however, contain elements not found in the prior art, and in combination with the other elements in the respective claims, in our opinion, define invention. In claim 3 this element is expressed in the phrase "maintaining the oil in its original position" by the means therein stated, and by the phrase "maintaining sufficient back pressure on the oil flowing through the wells to hold the oil body under substantially its natural pressure." In claim 7 the same element is expressed. A method is described by which the surface of the oil body is held in substantially its original level.

In other words, in claims 3 and 7, appellant has disclosed a method by which the level of the oil body remains constant, through securing such a ratio between the pressure of the water below and the gas or air pressure above the oil body as to secure practically the same rate of flow of oil from the wells until the oil body is practically exhausted. We cannot find that this particular element has been shown or suggested in the prior art, and this element, combined with the other steps set out in the claims, in our opinion, constitutes invention. Claims 3 and 7 should be allowed.

The decision of the Board of Appeals is affirmed as to claims 11 and 13, and reversed as to claims 3 and 7.